KRISTIN S. ESCALANTE (Cal. Bar No. 169635)
Email:  Escalantek@sec.gov
SANA MUTTALIB (Cal. Bar No. 267005)
Email:  Muttalibs@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     vs.<br><br>JUSTINFO LLC, DAVID WEDDLE, AND SCOTT ALLENSWORTH,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2.      Defendants have, directly or indirectly, made use of the means or

instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a) because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because Defendant Scott Allensworth resides in this district.

## SUMMARY

4.     This matter involves an unregistered and fraudulent securities offering orchestrated by Defendants JustInfo LLC ("JustInfo"); JustInfo's majority owner, David Weddle; and Scott Allensworth, doing business as Capital Growth Group Associates ("CGGA") (collectively "Defendants").  JustInfo, a self-described "investment club," pooled investor funds for the ostensible purpose of trading futures contracts.  From at least September 2015 through January 2017, Defendants raised at least $2,843,000 from approximately 57 investors by selling membership units in an LLC and entering into investment contracts. The offerings were not registered with the SEC as required by the federal securities laws.

5.     Throughout the period of the offering. Weddle and Allensworth made false and misleading statements to investors regarding the use of investor funds and the profitability of JustInfo's trading. Weddle and Allensworth misappropriated at least $1,000,000 in investor funds for their own use and, in a few instances, to make Ponzi payments of purported returns to prior investors.  Weddle created false trading reports, which Allensworth sent to investors, to cover up JustInfo's trading losses and create the false appearance that the investment was profitable.  As of March 2017, only $5,933.53 remained in the futures trading accounts affiliated with Weddle and JustInfo.

6.     By engaging in this conduct, Defendants violated Sections 5(a) and 5(c)

of the Securities Act of 1933 ("Securities Act"), Section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.

## THE DEFENDANTS

7.     **Defendant JustInfo** is a Kentucky limited liability company with its principal place of business in Somerset, Kentucky.  JustInfo holds itself out as a day trading company.  JustInfo has not registered any offerings of securities under the Securities Act, nor has it registered a class of any securities under the Exchange Act.

8.     **Defendant David Weddle** of Somerset, Kentucky, is the founder and majority owner of JustInfo.  Weddle holds no securities licenses, and has never been registered with the Commission in any capacity.  Weddle has no previous experience trading or working with futures investments of any kind.  Weddle is the sole signatory on JustInfo's bank account.

9.     **Defendant Scott Allensworth** of Valencia, California does business under the name of Capital Growth Group Associates ("CGGA").  Allensworth is a non-CPA tax preparer who provides tax preparation and accounting services.  Allensworth holds no securities licenses, and has never been registered with the Commission in any capacity.  Allensworth is the sole signatory on CGGA's bank account.

## OTHER RELEVANT ENTITIES

10.     **Dorman Trading, LLC** ("Dorman") is registered with the CFTC as a futures commission merchant.  Weddle and JustInfo maintained futures trading accounts at Dorman until Dorman closed those accounts in March 2017.  Dorman is not an SEC-registered broker-dealer.

## STATEMENT OF FACTS

**A.     The Investment Scheme**

11.     Defendants JustInfo, Weddle, and Allensworth purported to offer investors the opportunity to share in profits generated from trading futures contracts.

Defendants offered and sold securities, in the form of membership units in an LLC and investment contracts, to investors in two phases, referred to in this Complaint as the JustInfo offering and the CGGA offering.

### 1.     The JustInfo Offering

12.     Beginning in November 2015, Weddle and JustInfo offered investors an opportunity to become a part of its self-described "investment club" by entering into investment agreements with JustInfo.  The agreements provided that JustInfo would "set up and day trade e-mini futures" and that investors would "profit by earning 70% of all net proceeds generated by the original" investment (minus, in some cases, certain specified expenses).  The agreements further provided that investors would receive membership units in JustInfo that constituted between 2% and 10% of the company, and that investors would receive a pro rata share of the "proceeds associated with" those ownership interests.  During this first phase of the offering, Weddle and JustInfo raised $245,000 from a total of 10 investors, who each invested between $5,000 and $30,000.

13.     Investor funds were pooled into a futures account at Dorman and JustInfo and Weddle made trades for the entire pool.  Investors did not have any rights to direct the trades and had no control over any other aspect of JustInfo's operations.  Weddle had sole discretion over the trading process.

14.     At first, Weddle offered the investment opportunity only to a few friends located in Kentucky, and to Allensworth, whom he knew personally.  With time, however, he and Allensworth expanded the opportunity to other potential investors during the second phase of the offering.

### 2.     The CGGA Offering

15.     Prior to soliciting clients for the JustInfo scheme, Allensworth had solicited clients from his tax preparation business to invest in a prior futures trading scheme run by an individual who has not been charged in this action.  In early 2014, Allensworth had induced investors to invest over $280,000 in this prior scheme.

16.     By 2015, Allensworth was unable to withdraw his clients' funds from the prior scheme and by late 2016, he had learned that his clients' funds had been misappropriated.  Allensworth did not inform his clients of this fact.  Instead, Allensworth worked with Weddle and JustInfo to devise a scheme to conceal these losses from his clients and to further defraud them.

17.     Weddle advised Allensworth that if he could raise at least $300,000 in new investments, Weddle and JustInfo could use the new money to trade and make up for the loss of the misappropriated funds from the prior scheme.  Allensworth agreed to Weddle's proposal and together they launched the CGGA offering and began to solicit investors.

18.     Allensworth falsely represented to the clients whose funds had been misappropriated in the prior scheme that he had caused all or part of their investments to be transferred to Weddle and JustInfo.  These representations were false, because there were no remaining funds to be transferred.  Allensworth provided fabricated weekly trading reports and other trading updates to these clients that reflected trading on their behalf by JustInfo, even though he knew he had not actually transferred any of the investors' money to JustInfo and that no trading had been done on their behalf.

19.     In addition to defrauding the clients who had previously invested in the defunct scheme, Allensworth actively solicited additional tax preparation clients, as well as their families and friends, to enter into investment contracts with JustInfo.  As a result of Allensworth's increased solicitation efforts, Allensworth and Weddle brought in at least 47 additional investors from January 2016 through January 2017, and raised approximately $2,598,000.

20.     Weddle and Allensworth each spoke to potential investors about the investment opportunity during in-person meetings and via telephone.  Weddle and Allensworth also held at least one investor presentation during which they both spoke and presented the details of the investment opportunity to prospective and current investors.

COMPLAINT                                          5

21.     Weddle prepared offering materials that purported to describe JustInfo's trading strategy, and frequently helped to close sales by speaking to investors and answering their questions.

22.     The majority of investor contributions ranged from $5,000 to $25,000 in this second phase; however, one investor contributed at least $1,125,000, which was a combination of her own money and money from her family and friends.

23.     Neither Weddle nor Allensworth verified whether investors were accredited investors as defined in Rule 501 of Regulation D, 17 C.F.R. § 230.50.  At least some investors were not in fact accredited.  No financial statements or financial information were provided to investors.

24.     The structure of the investment changed in the second phase of the offering.  Under the new structure, investors were not offered ownership interests in an LLC.  Rather, they entered into investment contracts with CGGA that specified that investors' funds would be placed into a futures trading account and traded.

25.     The agreements provided that "[t]he Investor will profit by earning 20-25% of the proceeds generated by the brokerage investment," and that "[t]he Company will report monthly to the Investor regarding profits, losses as well as new trade opportunities discovered during the period."  In addition, Weddle and Allensworth repeatedly represented to investors that they could expect a 20-25% return per month on their investments.

26.     The CGGA agreements, which Allensworth prepared, provided that "CGGA and its affiliates" would handle all aspects of the day trading operations and would distribute investors' share of the trading profits.  The investors were not required to take any part in the management of JustInfo, and they did not do so.

## B.     Defendants' Antifraud Violations

### 1.     Misappropriation of Investors' Proceeds

27.     Weddle and Allensworth misused and misappropriated investor funds. The investment agreements provided that, with the exception of funds for certain

specified expenses, all of the investors' funds would be transferred into the futures trading account for trading. Instead of transferring the funds as required by the agreements, Weddle and Allensworth diverted a substantial portion of the funds for their own use.

28.     JustInfo and CGGA each had a single bank account. Weddle was the sole signatory on the JustInfo account and Allensworth was the sole signatory on the CGGA account.

29.     JustInfo and CGGA raised a combined total of $2.843 million between September 2015 and January 2017, with the JustInfo offering raising $245,000 and the CGGA offering raising $2,598,129. Approximately $2.8 million was supposed to be transferred to the futures trading account for trading, but only about $1.78 million was so transferred. Of the remaining amount, Weddle diverted approximately $338,000 for his own personal use and used approximately $37,000 to make Ponzi payments to investors. The rest was misappropriated by Allensworth.

30.     Allensworth personally solicited approximately $1.498 million of the approximately $2.843 million total raised in the two offerings. Allensworth represented to investors that the funds that they provided would be forwarded directly to JustInfo for trading. But instead of forwarding the funds as promised to investors, Allensworth deposited investor funds into his own account, commingling them with the funds from his tax preparation business. Allensworth then sent only about $1.124 million to JustInfo, improperly retaining more than $373,000 for his own use. In addition, Allensworth obtained another $292,000 to which he was not entitled from JustInfo. In total, Allensworth misappropriated more than $665,000 of investor funds.

31.     Weddle and Allensworth each represented to investors that their only compensation was to be 30% of the trading profits, split evenly between them. But JustInfo never had a profitable month and in fact suffered devastating losses. Thus, there was no profit to split and Weddle and Allensworth were entitled to no

compensation.

32.     The misrepresentations regarding the use of investor funds and Weddle and Allensworth's compensation were material.  A reasonable investor would find it important to his or her investment decision that investor funds would not be transferred to the trading account but instead would be misappropriated for Weddle and Allensworth's own use.

**2.     Misrepresentations Regarding Trading Methodology and Investment Security**

33.     Weddle represented to investors that JustInfo followed a trading methodology which would limit losses to investors.  Weddle represented that JustInfo would (1) trade only one futures contract per every $2,000 invested (*i.e.*, trade only $50 per $2,000 invested), thereby limiting the number of contracts traded per day and lowering the risk of losing a large percentage of the total funds in any one day; and (2) stop trading on any day after achieving either a one percent gain or a two percent loss.  Weddle further represented that he would "never waver" from this trading methodology.  Weddle made these representations in offering documents that he prepared and in a June 23, 2016 presentation to investors (among other places).

34.     On July 19, 2016, Weddle sent out a letter to investors titled "A Change in Trading Policy," which stated that JustInfo had grown and was trading more contracts than was manageable per day.  The letter explained that in order to deal with this growth, JustInfo would lower the number of contracts traded daily to prevent haphazard trading.  The letter reiterated the importance of the adherence to the supposed methodology, stating: "I cannot sacrifice our trading methodology that has made all of us quite a bit of money to date."

35.     The representations regarding the trading methodology were false.  Weddle did not follow the trading methodology that he had outlined to investors, and was not following the methodology at the time the representations were made.  In addition, contrary to representations to investors, no trading by Weddle made

investors "quite a bit of money"; rather, JustInfo consistently incurred substantial losses.

36.     Weddle's representations regarding JustInfo's trading methodology were material to investors.  Investors considered the security of the investment to be an important factor in their decision to invest, and Weddle stressed that adherence to the trading methodology would limit the investors' risk.  It would have been important to investors to know that Weddle was not following the trading methodology he touted, and that his trading was not generating returns.

**3.     Misrepresentations Regarding Rate of Return**

37.     Weddle misrepresented the rate of return to prospective and existing investors.  For example, a JustInfo offering document that Weddle prepared and circulated in or around February 2016 stated: "[N]et return per client to date has been over 20% per month on their original investment for those clients that have been in for over a month."

38.     Further, during a June 23, 2016 presentation attended by current and existing investors, Weddle represented that the investment would average 20-22% net return per month.

39.     A July 19, 2016 letter to investors, authored by Weddle, stated that the investment would "continue to provide a 20% monthly return," and further stated that "[a] 20% return per month (240% a year) is unheard of, but we have been able to achieve those results thus far…."  Weddle further represented to investors in that letter that "[y]ou should continue to make 20% on those contracts each and every month…"

40.     The representations about the rate of return that JustInfo was generating were false.  At the time Weddle made these misrepresentations, JustInfo had experienced significant, sustained trading losses.  Weddle began losing money as early as January 2016 – well before the majority of investors had invested – and never made a net profit after that.

41.     Weddle drafted, and Allensworth disseminated to investors, false weekly JustInfo trading reports.  The trading reports purported to show trading activity and profits allocated to the particular investor, and purported to show returns of approximately 20-25% per month.  But the results in the trading reports were wholly fabricated.

42.     The misrepresentations regarding the returns on investment were material to investors.  Reasonable investors would consider the returns on investment important to the investment decision.  Since none of the investors had direct access to the Dorman futures trading accounts or statements, representations made by Weddle and the reports issued by JustInfo were the only sources of information that investors had regarding the performance of their investments. The inaccurate returns shown on the fabricated trading reports encouraged several investors to reinvest on multiple occasions.

43.     On more than one occasion, Weddle fabricated a Dorman account statement.  In or about March 2017, when the single largest investor asked to see a Dorman account statement, Weddle fabricated a trading statement purporting to be a single day's snapshot of an account for the benefit of that investor.  The fake account statement showed over $4 million on account for the benefit of that investor alone.  In reality, on that date, the total balance in all of the Dorman accounts Weddle and JustInfo controlled was less than $6,000.

44.     Allensworth, who had previously lost his clients' money in a similar scam, unquestioningly passed on the false information provided by Weddle. Allensworth knew, or was reckless or negligent in not knowing, that at least some of the trading information Weddle provided was false.  At the very least, Allensworth knew that the trading reports for the investors who had lost money in the prior defunct futures trading scheme were false.  Weddle had not transferred any money from the defunct scheme to JustInfo, and therefore knew that any statements regarding the returns for those clients were fabricated.

45.     In or around December 2016, investors' withdrawal requests were not being fulfilled because JustInfo did not have the money to make payments.  Weddle falsely told Allensworth that the JustInfo accounts were under audit by Dorman and that the money in Dorman accounts had been frozen.

46.     This scenario was similar to the excuse that the orchestrator of the prior scheme had provided to Allensworth, and should have served as a red flag to Allensworth that the funds in question were no longer in the account.  The accounts were not in fact frozen, but despite his previous experience, Allensworth did not question Weddle's claims and instead passed along information about the fake audit to investors.

47.     Allensworth continued to solicit investors, make misrepresentations, and transfer investor funds to JustInfo through at least the end of January 2017.

### 4.     Defendants' Misrepresentations Were Material and Made with Scienter

48.     All of the false and misleading statements JustInfo, Weddle, and Allensworth made were material.  A reasonable investor would consider the investment's returns, trading methodology and use of funds important to the investment decision.  Further, a reasonable investor would have considered it important to know that JustInfo was sustaining heavy losses, that it was not adhering to a trading methodology, and that the returns, if any, were much less than those described in the offering documents and trading reports.  A reasonable investor would have further considered it important to know that investor funds would be used to pay Weddle and Allensworth's personal expenses and to make Ponzi payments instead of being transferred to the futures trading account.

49.     Weddle and Allensworth acted with scienter.  Weddle and Allensworth knew, or were reckless in not knowing, that JustInfo was sustaining heavy losses from its earliest days of trading and that, the representations about JustInfo's trading methodology and the security of the investment were false.  In addition, Weddle and

1    Allensworth knew, or were reckless in not knowing, that the JustInfo trading reports

2    disseminated to investors contained false and misleading statements about the rate of

3    return.  Moreover, Weddle and Allensworth each controlled at least one of the bank

4    accounts that received investor funds and knew, or were reckless in not knowing, that

5    they were misappropriating investor funds for their own personal expenses and to

6    make Ponzi payments.

7         50.    In addition, Weddle and Allensworth failed to exercise reasonable care

8    by, among other things, misappropriating investor funds, making Ponzi payments,

9    and making material false and misleading representations, and thus were at least

10   negligent.

11   **5.    Weddle and Allensworth Engaged in a Scheme to Perpetuate the**

12   **Fraud and Avoid Detection**

13        51.    Weddle and Allensworth engaged in a scheme to defraud investors.

14   Weddle and Allensworth engaged in numerous deceptive acts to perpetrate the

15   scheme.  For example, Weddle, with Allensworth's knowledge, used new investor

16   money to pay fabricated returns to old investors who sought to withdraw funds.

17   Weddle orchestrated these Ponzi payments to investors – even as JustInfo was

18   sustaining heavy trading losses – to cover up the losses and encourage reinvestment.

19        52.    For example, one investor sought to withdraw her $25,000 investment

20   seven weeks after she had invested.  Weddle returned the $25,000 and paid her an

21   additional $9,699.59 as her purported return.  Weddle explained that the additional

22   funds represented "about a 28% return on your capital."  But the purported return

23   came from new investor funds, and not trading profits.  After receiving the 28%

24   return on her initial investment, the investor decided to reinvest multiple times.  Her

25   net investment totaled over $1.1 million.

26        53.    Allensworth was aware of the Ponzi payments that Weddle was making.

27   Weddle routinely informed Allensworth that he was using new investor funds to pay

28   old investors.

54.     Allensworth also made Ponzi payments to investors after being encouraged to do so by Weddle.  Starting in or around March 2016, when Allensworth requested withdrawals on behalf of his clients, Weddle often delayed making the payments and proposed that Allensworth instead pay the investors from the proceeds of new investments.  Allensworth accepted Weddle's advice and made Ponzi payments to investors who had requested withdrawals.  Initially, Allensworth acted at Weddle's suggestion in making such payments; however, as the scheme evolved, Allensworth frequently decided on his own initiative to make Ponzi payments.  Allensworth referred to the use of new investor money to cover withdrawals by old investors "creative accounting."

55.     In December 2016, JustInfo's largest investor requested a large withdrawal.  Because JustInfo did not have the money to fulfill this and other withdrawal requests, Weddle represented to investors and to Allensworth that the futures trading accounts at Dorman were under audit and all investor funds had been frozen and could not be withdrawn.

56.     Despite the experience of previously losing his clients' money in another futures trading scam, Allensworth did not question Weddle's claim or undertake any due diligence efforts to confirm that the accounts were in fact under audit.  He also turned a blind eye to numerous investor complaints and concerns about JustInfo's inability to fulfill their withdrawal requests.  Instead, he simply passed information about the fake audit along to investors and continued to solicit investors, make misrepresentations, and transfer investor funds to JustInfo through at least the end of January 2017.

57.     Weddle continued to fabricate and Allensworth continued to disseminate the false trading reports and account statements through at least March 2017.  Weddle and Allensworth also continued to solicit investors and take new investor money through at least January 2017.

58.     Throughout the course of their fraud, Weddle and Allensworth took

steps to avoid regulatory scrutiny.  Weddle lied to Dorman on account opening documents by falsely representing that he was trading only for himself and not on behalf of others.  Weddle also made multiple false statements regarding their trading activities in response to compliance inquiries by the trading platform that JustInfo used in late 2016 and early 2017.

59.    Allensworth was aware of these lies. Further, Weddle told Allensworth on multiple occasions that they were likely violating the federal securities laws and that they needed to fly under the radar.  For example, in a June 2016 email to Allensworth, Weddle acknowledged that he could get into "quite a bit of trouble" if it were discovered that he was trading on behalf of others.  Allensworth responded by saying, "All noted…All understood…I fully get the dynamics but I do believe we have protected ourselves the best way we can."

60.    Given his control of JustInfo, Weddle's scienter is imputable to JustInfo.

**C.  Defendants' Registration Violations**

61.    The investment contracts in the JustInfo and CGGA offerings were securities under the federal securities laws.  The contracts involved an investment of money in a common enterprise with profits to come solely from the efforts of others. The membership units in the LLC offered and sold by JustInfo were also securities.

62.    During all relevant times, the securities offerings were required to be registered under the securities laws.  Neither the JustInfo offering nor the CGGA offering was registered with the SEC.  The JustInfo and CGGA offering documents were silent as to any registration exemption and the offerings were not exempt from registration.

63.    Both Weddle and Allensworth solicited investors through, among other things, emails and live presentations. Both offerings included investors from multiple states.

64.    Neither Weddle nor Allensworth asked or verified whether potential investors were accredited investors as defined in Rule 501 of Regulation D, 17 C.F.R.

§ 230.501.  Many of the investors were unaccredited and unsophisticated.

65.     Investors were not involved in JustInfo's trading decisions. Accordingly, investors were completely reliant on JustInfo, Weddle, and Allensworth for the investment's overall success.

66.     During all relevant times, Weddle and Allensworth, in both the JustInfo and CGGA offerings, made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## FIRST CLAIM FOR RELIEF

### Fraud in the Connection with the Purchase and Sale of Securities
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against All Defendants)

67.     The SEC realleges and incorporates by reference paragraphs 1 through 66 above.

68.     JustInfo, Weddle, and Allensworth engaged in a fraudulent offering scheme which they furthered through numerous deceptive acts.  Among other things, as previously alleged, Weddle misappropriated investor funds which he used for his own purposes and to make Ponzi payments to investors in order to create the appearance that the investment was profitable, to cover up losses and to encourage reinvestment.  He also fabricated trading reports and Dorman account statements to cover up losses and deceive investors into believing that JustInfo was using their funds to make profitable trades, thereby inducing additional investments.  Weddle also provided false information to Dorman and to the trading platform company to conceal that he was trading on behalf of other people.  Weddle was acting on behalf of JustInfo in perpetrating these acts, and his actions are attributable to JustInfo.

69.     Allensworth also engaged in deceptive acts that furthered the fraudulent offering scheme.  As with Weddle, Allensworth misappropriated investor funds for his own use and to make Ponzi payments.  Allensworth also distributed the false

1    trading reports to investors to deceive them into believing their funds were bring

2    profitably traded, thereby inducing new investment.

3        70.    Weddle and Allensworth also made material false representations to

4    investors.  Among other things, Weddle, on behalf of JustInfo, falsely represented

5    that all investor funds would be transferred to the Dorman futures trading account or

6    used for specified trading related expenses; that JustInfo had followed and would

7    continue to follow a specific trading methodology that would limit the risk of the

8    investment; that the net return per client had been and would continue to be over 20%

9    per month on their original investment; and that Weddle and Allensworth's combined

10   compensation would be limited to 30% of the trading profits.  Each of those false

11   representations was material to investors.

12       71.    Allensworth similarly made material false representations to investors.

13   Through the CGGA investment agreements, Allensworth falsely represented that

14   investor funds would be transferred in full to the Dorman futures trading account,

15   when in fact he misappropriated investor funds for his own use.  He further told

16   investors that Weddle and Allensworth's compensation would be limited to 30% of

17   the trading profits.

18       72.    Weddle and Allensworth acted with scienter.  Each knew, or was

19   reckless in not knowing, that they had misappropriated funds and engaged in the

20   other deceptive acts. Among other things, Weddle and Allensworth respectively

21   controlled the JustInfo and CGGA bank accounts into which investor funds were

22   deposited and personally orchestrated the misappropriation and Ponzi payments.

23   Further, Weddle and Allensworth knew, or were reckless in not knowing, that the

24   misrepresentations that were made to investors were not true.  Among other things,

25   Weddle fabricated false trading reports and statements, and Allensworth disseminated

26   the fabricated trading reports to investors despite knowing that the reports were false.

27       73.    Because Weddle was, at all relevant times, acting on behalf of JustInfo,

28   Weddle's scienter is attributable to JustInfo.

74.     By engaging in the conduct described above, Defendants, JustInfo, Weddle, and Allensworth, with scienter, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange:  (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

75.     By engaging in the conduct described above, Defendants JustInfo, Weddle, and Allensworth violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(b) & 240.10b-5(c).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(1) and (3) of the Securities Act

### (Against All Defendants)

76.     The SEC realleges and incorporates by reference paragraphs 1 through 66 above.

77.     As alleged above in this complaint, among other allegations, Defendants JustInfo, Weddle, and Allensworth participated in a scheme to defraud JustInfo's investors, which included providing false information to Dorman Trading; drafting, revising, reviewing, and/or distributing false and misleading offering materials and trading information; misappropriating investor funds for personal use; and making Ponzi payments to investors.  Since Weddle and Allensworth, respectively, controlled the JustInfo and CGGA bank accounts into which investor funds were deposited and since they were the ones orchestrating the misappropriation and Ponzi payments, they

knew, or were reckless in not knowing, that they committed deceptive acts in furtherance of the fraudulent scheme.

78.   By engaging in the conduct described above, Defendants JustInfo, Weddle, and Allensworth, and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly: (a) with scienter, employed devices, schemes, or artifices to defraud; and (b) with at least negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

79.   By engaging in the conduct described above, Defendants JustInfo, Weddle, and Allensworth violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) & 77q(a)(3).

## THIRD CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(2) of the Securities Act

### (Against All Defendants)

80.    The SEC realleges and incorporates by reference paragraphs 1 through 66 above.

81.   JustInfo, Weddle, and Allensworth obtained money by means of material misrepresentations.  As discussed above, JustInfo, Weddle, and Allensworth raised approximately $2,843,000 from investors in the offerings by making materially false and misleading statements.

82.   Among other things, Weddle, on behalf of JustInfo, obtained money or property by falsely representing that all investor funds would be transferred to the Dorman futures trading account or used for specified trading related expenses; that JustInfo had followed and would continue to follow a specific trading methodology that would limit the risk of the investment; that the net return per client had been and

would continue to be over 20% per month on their original investment; and that Weddle and Allensworth's combined compensation would be limited to 30% of the trading profits.  Each of those false representations was material to investors.

83.    Allensworth similarly made obtained money or property by means of material false representations to investors.  Through the CGGA investment agreements, Allensworth falsely represented that investor funds would be transferred in full to the Dorman futures trading account.  He further told investors that Weddle and Allensworth's compensation would be limited to 30% of the trading profits.  Allensworth also disseminated the fabricated trading reports to investors despite knowing that the reports were false.

84.    Defendants JustInfo, Weddle, and Allensworth, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

85.    By engaging in the conduct described above, Defendants JustInfo, Weddle, and Allensworth violated, and unless restrained and enjoined, will continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## FOURTH CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against All Defendants)

86.    The SEC realleges and incorporates by reference paragraphs 1 through 66 above.

87.    The investment contracts and LLC membership interests offered and sold in the JustInfo and CGGA offerings were securities, and the offer and sale of the

securities were required to be registered with the SEC, but were not registered.  The offerings were not exempt from registration under any exemption.

88.     By engaging in the conduct described above, Defendants JustInfo, Weddle, and Allensworth, and each of them, directly or indirectly, singly and in concert with others, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

89.     By engaging in the conduct described above, Defendants JustInfo, Weddle, and Allensworth  has violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a) & 77e(c).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining JustInfo, Weddle, and Allensworth, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. § 77e(a), 77 e(c), 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

### IV.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  October 11, 2017

*/s/ Kristin S. Escalante*
Kristin S. Escalante
Attorney for Plaintiff
Securities and Exchange Commission